# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARQUELL ATKINSON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 18-840 |
| | ) | |
| v. | ) | Judge Marilyn J. Horan |
| | ) | |
| THOMAS C. MCCARTHY and | ) | |
| ANTHONY GLAB, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

On June 25, 2018, Plaintiff Marquell Atkinson filed suit in the present matter against Defendants Thomas C. McCarthy and Anthony Glab. (ECF No. 1). Plaintiff Atkinson subsequently filed an Amended Complaint, alleging a claim of excessive force pursuant to 42 U.S.C. § 1983 against each Defendant. (ECF No. 15). Following discovery, Defendants filed the present Motion for Summary Judgment on July 31, 2019. (ECF No. 31). The parties briefed the issues, (ECF Nos. 34, 38, 43), and they provided Concise Statements of Facts and appendices, (ECF Nos. 32–33, 39–42).

For the following reasons, the Motion for Summary Judgment will be granted, and judgment will be entered in favor of Defendants.

**I. Background**

On June 24, 2016, at approximately 9:40 p.m., Marquell Atkinson pulled into the parking lot of a Kwik Fill gas station in California Borough, Pennsylvania. ECF No. 32, at ¶¶ 5, 9. California Borough Police Officer Thomas C. McCarthy, on duty and in full uniform, was already present at the Kwik Fill. *Id.* at ¶¶ 4, 5. Officer McCarthy's marked patrol car was

1

parked at the gas pumps. *Id.* at ¶ 6. Mr. Atkinson parked his black Ford Expedition at the gas pumps as well, adjacent to Officer McCarthy's patrol vehicle. *Id.* at ¶¶ 8, 10. Mr. Atkinson's front windows were down, and he was playing music loudly over his vehicle's speakers. *Id.* at ¶ 12. Two uniformed security guards, who were also present at the Kwik Fill, testified that the music was so loud that it caused the windows of the gas station to vibrate. *Id.* at ¶ 7; ECF No. 33-5, at 4–5; ECF No. 33-6, at 3–6. Mr. Atkinson got out of his vehicle, intending to go inside the gas station for a snack, and left the vehicle running with the windows down and the music playing. ECF No. 32, at ¶ 13; ECF No. 39, at ¶ 53.

Officer McCarthy, who was also in the parking lot, asked that Mr. Atkinson turn down his music. ECF No. 32, at ¶ 14; ECF No. 39, at ¶ 14; ECF No. 33-3, at 9. According to Mr. Atkinson, he told Officer McCarthy that "he was just running into the store and coming right back out." ECF No. 39, at ¶ 61. Officer McCarthy asked Mr. Atkinson at least two more times to turn down the music, and he advised Mr. Atkinson that playing loud music constituted disorderly conduct. ECF No. 39, at ¶¶ 63, 65; ECF No. 41, at ¶ 65. Mr. Atkinson disagreed and told Officer McCarthy that playing loud music was not disorderly conduct. ECF No. 39, at ¶ 66. Mr. Atkinson also alleges that Officer McCarthy referred to the music as "f---ing black ghetto music." *Id.* at ¶¶ 63, 69.

Officer McCarthy radioed fellow California Borough Police Officer Anthony Glab for assistance. ECF No. 32, at ¶ 16. Officer McCarthy then approached Mr. Atkinson and asked him to provide identification. *Id.* at ¶¶ 15, 17. According to Officer McCarthy, he advised Mr. Atkinson that he was going to give Mr. Atkinson a citation for disorderly conduct. *Id.* at ¶ 17. Mr. Atkinson contends that he was not so advised. ECF No. 39, at ¶ 17. Mr. Atkinson removed his identification from his wallet and extended it toward Officer McCarthy with his right hand.

ECF No. 32, at ¶¶ 18, 20; ECF No. 39, at ¶¶ 19, 68; ECF No. 41, at ¶ 68. Officer McCarthy testified when he reached for the identification, Mr. Atkinson pulled it back so that it was out of Officer McCarthy's reach. ECF No. 32, at ¶ 20. Mr. Atkinson denies this, although at his subsequent criminal trial he testified that "the only time I pulled it back is when he approached me." ECF No. 39, at ¶ 20; ECF No. 33-7, at 5. The surveillance video of the parking lot unfortunately does not provide clarity on this point, due to the positions of Officer McCarthy and Mr. Atkinson relative to the camera. ECF No. 33-4.

Officer McCarthy then grabbed Mr. Atkinson's left arm, and he advised Mr. Atkinson that he was under arrest. ECF No. 32, at ¶¶ 21–23; ECF No. 33-3, at 10. Officer McCarthy pushed Mr. Atkinson up against the patrol car in order to detain him. ECF No. 32, at ¶ 24. According to Officer McCarthy, Mr. Atkinson pushed off the car and kicked his leg back twice at Officer McCarthy. *Id.* at ¶ 26. Mr. Atkinson, however, denies pushing off the car or kicking back at Officer McCarthy. ECF No. 39, at ¶ 26. Instead, Mr. Atkinson contends that his leg "kicked back twice in a bracing motion due to [Officer McCarthy's] force and contact." *Id.* After the second kick, Officer McCarthy took Mr. Atkinson to the ground. ECF No. 32, at ¶ 27. Officer McCarthy testified that once on the ground, that he told Mr. Atkinson repeatedly to "stop resisting" and "put your hands behind your back." *Id.* at ¶ 28. Mr. Atkinson denies being told to stop resisting. ECF No. 39, at ¶¶ 28, 31; ECF No. 33-7, at 10; ECF No. 40-3, at 23. Additionally, Mr. Atkinson testified that he did not resist throughout the entire incident, and that Officer McCarthy could have easily handcuffed him at any time. ECF No. 39, at ¶¶ 28, 71, 82; ECF No. 33-3, at 10–11. At Mr. Atkinson's criminal trial, however, he was asked, "You did struggle with Officer McCarthy; is that correct?", to which he answered, "Yes." ECF No. 33-7, at 10.

Officer Glab arrived at the gas station and got out of his patrol car. ECF No. 32, at ¶¶ 30–31. Officer Glab testified that he heard Officer McCarthy ordering Mr. Atkinson to "stop resisting" and to place his hands behind his back. *Id.* at ¶ 31. Officer Glab also testified that he observed Officer McCarthy and Mr. Atkinson on the ground, that Mr. Atkinson was not handcuffed, and that Mr. Atkinson's hands were underneath him. *Id.* at ¶ 32. Mr. Atkinson testified that his hands were not underneath him, as Officer McCarthy had Mr. Atkinson's left arm behind his back and his right arm was extended, holding out his identification. ECF No. 39, at ¶ 32. Again, the surveillance video is not entirely helpful here, as the grainy quality of the picture makes it difficult to see where each of the parties' hands are. ECF No. 33-4.

According to Officer Glab, he too ordered Mr. Atkinson to stop resisting and to place his hands behind his back. ECF No. 32, at ¶ 34. Mr. Atkinson denies that Officer Glab made these statements to him. ECF No. 39, at ¶ 34. Officer Glab also testified that he tried to pull one of Mr. Atkinson's arms behind his back, but was unable to do so due to Mr. Atkinson's resistance. ECF No. 33-2, at 11. In the surveillance video, though grainy, it appears that Officer Glab tugs at Mr. Atkinson's arm before reaching for his taser. ECF No. 33-4; *see also* ECF No. 40-9 (Mr. Atkinson's expert's report, noting that in the video, "Officers McCarthy and Glab appeared to attempt to extract Atkinson's hands in order to secure them with restraints"). Officer Glab then used his taser to "drive-stun" Mr. Atkinson for three to five seconds, after which the Officers handcuffed Mr. Atkinson and assisted him to a standing position. ECF No. 32, at ¶¶ 36–39. The Officers searched Mr. Atkinson, placed him in a patrol car, and transported him to the police station. *Id.* at ¶ 40. Mr. Atkinson was charged with several crimes, including Disorderly Conduct-Unreasonable Noise and two counts of Resisting Arrest. *Id.* at ¶ 48; ECF No. 39, at

¶ 48. Mr. Atkinson was later found guilty of the Disorderly Conduct charge, and not guilty of the Resisting Arrest charges. ECF No. 32, at ¶ 48; ECF No. 39, at ¶ 48.

Following Mr. Atkinson's arrest, while still at the police station, Mr. Atkinson claimed he was injured. ECF No. 32, at ¶ 41. Mr. Atkinson was then transported to Monongahela Valley Hospital, where he complained of, and was treated for, a head injury. *Id.* at ¶¶ 42, 43. Mr. Atkinson also alleges that he sustained various injuries as a result of the Officers' use of force during his arrest, including post-concussion headaches, neck sprain/strain, and a re-aggravation of a left shoulder injury. ECF No. 39, at ¶ 103. Mr. Atkinson consequently filed the present suit. Mr. Atkinson alleges a § 1983 claim of excessive force, in violation of the Fourth and Fourteenth Amendments, against Officer McCarthy in Count One and against Officer Glab in Count Two. The Officers now seek summary judgment in their favor.

**II. Legal standard**

According to Federal Rule of Civil Procedure 56, a court must grant summary judgment where the moving party "shows that there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For a dispute to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party." *Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 213 (3d Cir. 2017) (internal quotations omitted). Additionally, for a factual dispute to be material, it must have an effect on the outcome of the suit. *Id.*

In reviewing and evaluating the evidence for a motion for summary judgment, the court must "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the" non-moving party. *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014) (internal quotations omitted). However, where "the non-moving party fails to make 'a

sufficient showing on an essential element of her case with respect to which she has the burden of proof,'" the moving party is entitled to judgment as a matter of law. *Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 213 (3d Cir. 2017) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

**III. Discussion**

Several provisions in the Constitution protect against the use of excessive force by the government. Where a plaintiff claims "that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of his person," the relevant constitutional provision is the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 388 (1989); *see also id.* at 395 ("Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims."). The Fourth Amendment requires that the arresting officers' conduct be "'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397.

As an initial matter, "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* at 396. Whether that "physical coercion," or force, is objectively reasonable thus "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* (internal quotations omitted). A reviewing court must pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an

6

immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*

Additionally, an arresting officer's use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. A reviewing court must allow "for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 397. Accordingly, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id.* at 396 (internal quotations and citation omitted). And, relevant here, although the use of a taser is relatively serious, courts have repeatedly found that it may be reasonable for an arresting officer to use a taser when the suspect is resisting arrest. *Brown v. Cwynar*, 484 Fed. App'x. 676, 681 (3d Cir. 2012).

In the present case, Officer McCarthy argues that he is entitled to summary judgment because his "minimal use of force to effect the arrest of" Mr. Atkinson "was objectively reasonable" in light of Mr. Atkinson's pushing and kicking back at Officer McCarthy during the arrest. ECF No. 34, at 1. Likewise, Officer Glab contends that he too is entitled to summary judgment because his "use of force, including a taser, was objectively reasonable considering that at his arrival, he observed an active situation with Officer McCarthy struggling to apprehend Atkinson." *Id.* Mr. Atkinson, however, argues that he did not struggle or fight back at all and that he did not resist arrest, and that as a result, the Officers' conduct was unreasonable.[1] ECF

---

[1] In his Response in Opposition to the Motion for Summary Judgment, Mr. Atkinson also advocates for the Court to apply the Fourteenth Amendment's "shocks the conscience" standard. However, the Supreme Court made clear in *Graham v. Connor* and in subsequent cases that it is the Fourth Amendment alone that applies to claims of excessive force in the course of arrest.

7

No. 38, at 9. It appears from facts and the parties' arguments that there are three specific points in the timeline of events that are the focus of Mr. Atkinson's claims: (1) Officer McCarthy pushing Mr. Atkinson up against the patrol car; (2) Officer McCarthy taking Mr. Atkinson to the ground; and (3) Officer Glab using the taser on Mr. Atkinson.

Turning first to Officer McCarthy's decision to push Mr. Atkinson up against his patrol car, the Court applies the Supreme Court's factors as set out in *Graham*. The first factor regarding the severity of Mr. Atkinson's crime tilts in Mr. Atkinson's favor because his crime was the summary offense of disorderly conduct related to playing loud music. Next, in the minutes leading up to Officer McCarthy's decision to arrest Mr. Atkinson, Mr. Atkinson admits he was asked at least three times to turn down his music, and each time did not comply. Additionally, when asked for his identification, Mr. Atkinson admitted to withdrawing it as Officer McCarthy approached him. A reasonable officer in Officer McCarthy's position could understand Mr. Atkinson's behavior to indicate that arresting Mr. Atkinson might be difficult, in that Mr. Atkinson's noncompliant behavior might translate to resisting arrest or to safety issues for the officer. Therefore, the second and third factors tilt slightly in Officer McCarthy's favor. Moreover, as the Supreme Court noted in *Graham*, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Accordingly, Officer McCarthy's decision to push Mr. Atkinson against his patrol car during the arrest did not violate the Fourth Amendment.

Second, as to Officer McCarthy's decision to put Mr. Atkinson on the ground, Mr. Atkinson admits that he kicked back twice, but contends that he did so only to brace himself. Viewing the facts in the light most favorable to Mr. Atkinson, and viewing the situation objectively, a reasonable officer in Officer McCarthy's position could nevertheless understand in

8

the heat of the moment that Mr. Atkinson's "bracing motions" were attempts to kick the officer—the resistance and safety issues a reasonable officer perhaps could have anticipated. Such resistance or fighting back would thus justify additional force on the part of the officer to effectuate the arrest. In other words, an arrestee kicking at an officer can render reasonable the officer's split-second decision to put the arrestee on the ground in order to gain compliance. Officer McCarthy's decision to take Mr. Atkinson down to the ground, therefore, did not constitute excessive force in violation of the Fourth Amendment.

Lastly, as to Officer Glab's conduct, and viewing the facts in the light most favorable to Mr. Atkinson, Officer Glab likewise did not use excessive force in the arrest of Mr. Atkinson. Again turning to the *Graham* factors, a reasonable officer in Officer Glab's position, upon his arrival at the scene, would have had no knowledge of the events leading up to the arrest, and thus no knowledge regarding the severity of the arrestee's crime. The first factor thus does not tip in either direction. Next, upon Officer Glab's arrival, he observed Officer McCarthy in an apparent struggle on the ground with Mr. Atkinson. A reasonable officer arriving on this scene would likely believe that there was a threat to his fellow officer's safety. The second factor therefore tilts in favor of Officer Glab. Third, according to Mr. Atkinson, Officer McCarthy already had one of Mr. Atkinson's arms behind his back, but Mr. Atkinson's other arm was outstretched. Officer Glab attempted to pull Mr. Atkinson's arm behind him, but was unable to do so. A reasonable officer in Officer Glab's shoes could understand this to be resistance from the arrestee. It would be reasonable, then, in light of the serious situation that the assisting officer believed was occurring—that is, a suspect was resisting arrest and was presenting a potential threat to the officers' safety—for the officer to decide to use his taser to gain compliance from the arrestee and gain control over the situation. Officer Glab's conduct was thus reasonable in

9

light of the totality of the facts and circumstances. His conduct therefore did not violate the Fourth Amendment.

In sum, when viewing the facts and evidence in the light most favorable to Mr. Atkinson, and viewing the facts from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight, Officer McCarthy's and Officer Glab's conduct did not amount to excessive force in violation of the Fourth Amendment.

## IV. Conclusion

Based on the foregoing, Officers McCarthy and Glab's Motion for Summary Judgment is hereby GRANTED. A separate order entering judgment in their favor, pursuant to Federal Rule of Civil Procedure 58, will follow.

DATE December 16, 2019

Marilyn J. Horan
United States District Judge

10